490 F.2d 319
 Forrest MURPHY et al., Appellants,
v.
Leonard LANDSBURG, Individually and as Trustee of the Estate
of Adolph L.Tafel, Deceased, Boericke & Tafel,
Inc., a Pennsylvania corporation, et al.
 No. 73-1284.
 United States Court of Appeals, Third Circuit.
 Argued Oct. 24, 1973.
Decided Dec. 28, 1973, Certiorari Denied April 15, 1974, See
94 S.Ct. 1941.
 
 Victor Wright, Fox, Rothschild, O'Brien & Frankel, Philadelphia, Pa., for appellants.
 James Francis Lawler, Ostroff & Lawler, Philadelphia, Pa., for appellee.
 J. Stokes Adams, III, Hart Childs Hepburn Ross & Putnam, Philadelphia, Pa., for Boericke & Tafel, Inc., D. Lee and G. H. Tafel.
 Before BIGGS, GIBBONS, and ROSENN Circuit Judges.
 OPINION OF THE COURT
 ROSENN, Circuit Judge.
 
 
 1
 This is an appeal from an order of the United States District Court for the Eastern District of Pennsylvania granting defendant's motion for summary judgment on two counts of plaintiffs' six-count complaint. Plaintiffs, Forrest Murphy, Virginia W. Murphy. Forrest J. Murphy, Jerry J. Murphy, and Mary V. Murphy, d/b/a Utah Oil Land Company (Murphy)[1] brought this diversity action alleging various causes of action against four defendants. This appeal involves the first two counts of the complaint, charging one of the four named defendants, Leonard Landsburg (Landsburg), both individually and as Trustee of the Estate of Adolph L. Tafel, with breach of contract.[2] After considering the contentions of the parties, we affirm the judgment of the district court.
 
 
 2
 In April 1971 Landsburg, as trustee of the Estate of Adolph L. Tafel, deceased, owned 750 shares of the common stock of Boericke & Tafel, Inc. (B& T). These shares constituted 54.94% Of the outstanding stock of the corporation. Under the by-laws of B&T, 60% Of the common stock was required for control.
 
 
 3
 By written proposal dated July 7, 1971, Murphy submitted an offer to Landsburg to purchase all of the outstanding shares of B&T at a price of $240 per share. The offer provided that payment would be made within one week 'after the effectuation of full operating control of the business by the purchasers' and additionally, that:
 
 
 4
 If the number of shares tendered in response hereto is less than the number of shares required to effect a complete liquidation of the B&T Corporation then this offer may be declared by the purchasers to be null and void.
 
 
 5
 The offer stated it was to be effective until August 16, 1971, subject to extension at the option of the purchaser.
 
 
 6
 Two days later Landsburg, acting through his attorney, accepted by letter the offer as to the 750 shares held by the Trust at a price of $250 per share. Landsburg additionally agreed to tender Murphy's proposal to all B&T minority shareholders 'to make (Murphy's) proposal effective.' The acceptance was subject to the approval of the Orphans' Court of Philadelphia County.
 
 
 7
 Murphy's written reply, dated July 13, 1971, confirmed the new price of $250 per share and the condition of Orphans' Court approval.
 
 
 8
 In an effort to acquire a controlling interest in B&T, Landsburg, on July 30, 1971, made a tender offer to purchase the stock of the minority stockholders of B&T. He was unsuccessful in securing any affirmative response.
 
 
 9
 By letters dated August 9, September 13, and November 2, 1971, Murphy ultimately extended the expiration date of the proposal to December 1, 1971.
 
 
 10
 On November 23, 1971, Murphy telephoned Lawler, Landsburg's attorney, and told him that he did not want to delay the closing any further and was prepared to purchase the 750 shares of B&T stock for $187,500 and waive the condition of control. Although disputed, Lawler claimed that he told Murphy to put the waiver in writing. Landsburg subsequently received a letter dated November 23, 1971, in which Murphy wrote:
 
 
 11
 With reference to the 750 shares of Boericke & Tafel, Inc. common stock owned by the Adolph L. Tafel Trust, I hereby extend until January 15, 1972, the closing of the agreement formed by my proposal of July 7, 1971 and your acceptance thereof dated July 9, 1971.
 
 
 12
 On December 1, 1971, Landsburg mailed out solicitations for sealed bids to several parties, including Murphy, for the sale of the Trust's 750 shares of B& T stock. By letter dated December 3, 1971, Murphy, through his attorney, informed Landsburg of his desire to complete the purchase of the 750 shares at a price of $187,500 and of his waiver of the condition requiring corporate control. Enclosed was a cashier's check for $37,500 representing the first of five annual payments under his initial proposal. Landsburg received an additional bid for the purchase of the 750 shares in the amount of $221,000 from Donald Lee, president of B&t, on behalf of the corporation.
 
 
 13
 By letter dated December 13, 1971, Landsburg notified Murphy that he had sold the 750 shares to B&T at a higher price and returned Murphy's cashier's check. One week later, Landsburg filed a petition with the Orphans' Court. His petition described the initial transaction with Murphy and the later negotiations with B&T and requested that in the interest of the Trust, the sale to B&T be approved. Murphy filed objections to Landsburg's petition. On January 4, 1972, a hearing was held at which Murphy appeared and participated. He testified and vigorously argued that he had a binding contract with Landsburg for the purchase of the 750 shares which preceded any subsequent contract with B&T. He acknowledged, however, that in late October 1971, when Landsburg offered to sell him the 750 shares without corporate control, he refused. He additionally argued that Landsburg's agreement to sell his 750 shares to B&T was not in the best interest of the Trust because, although B&T offered a higher purchase price, payment was spread over a period of several years and security for the payment of the purchase price was inadequate.
 
 
 14
 On February 15, 1972, the Orphans' Court approved the sale of the 750 shares to B&T. Murphy took no exceptions to that decree nor did he lodge any appeal with the Supreme Court of Pennsylvania. One week prior to the Orphans' Court decree, Murphy filed his complaint in the instant case seeking, inter alia, an injunction and damages for breach of contract.[3]
 
 
 15
 On appeal Murphy contends, as he did before the Orphans' Court, that he had a binding contract with Landsburg to purchase the Trust's 750 shares of B&T stock subject only to the approval of the Orphans' Court. The obligation to secure Orphans' Court approval, Murphy further contends, was expressly assumed by Landsburg and was implicitly governed by a duty to act in good faith. Landsburg's alleged breach consisted of his solicitation of higher bids while under an obligation to submit Murphy's offer to the Court for approval.
 
 
 16
 At the outset we are confronted by the contention, urged by Landsburg, that the present action is barred by the doctrine of res judicata. Landsburg argues that both because the 'gist' of Murphy's claims before the Orphans' Court and the district court arise out of the same set of operative facts and because the relief requested in both courts was similar, Murphy is barred from instituting the present suit.
 
 
 17
 Section 68 of the Restatement of Judgments (1942) provides:
 
 
 18
 (1) Where a question of fact essential to the judgment is actually litigated and determined by a valid and final judgment, the determination is conclusive between the parties in a subsequent action on a different cause of action . . . (2) A judgment on one cause of action is not conclusive in a subsequent action on a different cause of action as to questions of fact not actually litigated and determined in the first action.
 
 
 19
 Comment (a) to Section 68 distinguishes the doctrines of res judicata and collateral estoppel. The former applies when the subsequent cause of action is identical to the original action. Its scope is broad-- the original judgment is conclusive not only as to matters actually raised and litigated but also as to matters that could have been raised and litigated. The latter, collateral estoppel, applies when the subsequent cause of action differs from the original cause of action. Its scope is more limited. Only matters 'actually litigated and determined by the (original) judgment' may collaterally estop a party in a subsequent proceeding. See 1B Moore's Federal Practice 0.441(2), at 3777 (2d Ed. 1965).[4]
 
 
 20
 A comparison of the action before the Orphans' Court with the instant action reveals that this case is more appropriately dealt with under the doctrine of collateral estoppel then res judicata. The petition before the Orphans' Court essentially sought approval of a contract between Landsburg and B&T. It was not, as is the present action, a suit for damages for breach of contract between Landsburg and Murphy. While Murphy did appear in the Orphans' Court proceeding and raised the question of the existence of a contract between himself and the Trustee, the two proceedings involved different objectives and relief.
 
 
 21
 Even under the more limited doctrine of collateral estoppel, however, we believe that the decree of the Orphans' Court approving the sale of stock to B& T precludes Murphy from arguing that Landsburg breached an outstanding obligation. The essence of the present breach of contract action lies in Murphy's contention that Landsburg solicited higher bids while under a contractual duty to submit his proposal to the Orphans' Court. This contention was disposed of in the course of the proceedings before that court.[5]
 
 
 22
 The Orphans' Court was presented with the question of which of two assumedly outstanding contracts was in the best interest of the Estate and ruled in favor of the higher B&T offer. In approving this bid, the Court in effect made an adjudication that Landsburg had no prior binding agreement with Murphy for the sale of stock and additionally rejected Murphy's argument concerning the adequacy of security for the purchase price. While the Court did not expressly rule on the question of whether Landsburg breached an obligation to seek Orphans' Court approval of Murphy's offer at the time he, Landsburg, solicited bids, we believe that such a ruling can be fairly implied.
 
 
 23
 An examination of the record of the Orphans' Court proceedings reveals that Murphy raised before that Court precisely the contention urged in the present action. The record reveals that the substance of the entire stock transaction with Murphy, including the negotiations, conditional proposal, conditional acceptance, and all other relevant facts were presented to the Orphans' Court. Murphy and Landsburg personally appeared and participated in the Orphans' Court proceedings and each testified concerning the transaction. The position of the parties in the district court and in the Orphans' Court is essentially the same, Murphy asserting the existence of an obligation by Landsburg to submit Murphy's proposal to the Court before soliciting any other bids, and Landsburg denying it. Murphy strenuously argued that the Trustee's solicitation of bids was 'improper and illegal.' Had the Court found that at the time of solicitation Landsburg was under an obligation to Murphy we doubt it would have approved the offer of another party knowing that such approval might have the effect of subjecting the Estate to damages for breach of the prior agreement.
 
 
 24
 Murphy argues that the Orphans' Court decree is not binding on him because he brought this action in the district court one week before the Orphans' Court entered its order. This contention is without merit. To be given res judicata or collateral estoppel effect, a judgment need not be entered prior to the commencement of the action in which the binding effect of the judgment is sought. Goldstein v. Ahrens, 379 Pa. 330, 108 A.2d 693 (1954); see, Restatement of Judgments 43; 1B Moore's Federal Practice P0.405(1), at 627 n. 25 (2d Ed. 1965).
 
 
 25
 The judgment of the district court will be affirmed. Each party will bear its own costs.
 
 
 
 [1]
 The negotiations on behalf of the plaintiffs were conducted by Forrest Murphy
 
 
 [2]
 In the first two counts, Murphy requested, in an amended complaint, both damages and injunctive relief. We have jurisdiction to hear this appeal under 28 U.S.C. 1292(a)(1)
 
 
 [3]
 Although the sale had been approved to B&T by the Orphans' Court, Landsburg, as of the date of the application for the preliminary injunction, continued to hold the share certificates as security for the purchase price
 
 
 [4]
 Because jurisdiction is based on diversity of citizenship, we apply the law of Pennsylvania with respect to a plea of res judicata or collateral estoppel. Blum v. William Goldman Theatres, 174 F.2d 914 (3d Cir. 1949). Pennsylvania follows the Restatement on Judgments, Section 68, as to the rule of collateral estoppel. Thal v. Krawitz, 365 Pa. 110, 73 A.2d 376 (1950)
 
 
 [5]
 Landsburg denied that he was under any obligation to Murphy on December 1, 1971, the date he mailed out solicitations for bids. He contended that any obligation regarding the Trust's 750 shares was subject to the condition precedent that Murphy be given operating control of B&T. Murphy did not allege that Landsburg was ever in a position to offer Murphy sufficient shares to effect corporate control. Nor did Murphy contend either that he was unaware of Landsburg's inability to deliver control or that Landsburg failed to exercise good faith in his effort to secure control. Landsburg argued that as of December 1 that condition was neither satisfied nor effectively waived. He contended that Murphy's letter of November 23 did not waive the condition and that he construed it as another (fourth) effort to unilaterally extend the original conditional proposal. On December 1, Landsburg, considering himself under no obligation to accept the new extension, elected to solicit bids having allegedly given prior notice thereof to Murphy. On December 8, after Landsburg had solicited bids, he received Murphy's letter dated December 3 waiving the condition
 It does not appear that the district court ruled on the question of whether Landsburg was under a binding obligation to submit Murphy's proposal to the Orphans' Court. In view of the lack of factual findings on the issue and because of our disposition of this case on the ground of collateral estoppel, we decline to rule on this matter.