633 F.2d 1264
 Julie GRUESCHOW, on behalf of herself and all others
similarly situated, Appellee,
v.
Patricia HARRIS, Secretary of the United States Department
of Health and Human Services; Wellington Webb, Denver
Principal Regional Official, Department of Health and Human
Services; William Janklow, Governor of the State of South
Dakota; and James Ellenbecker, Secretary of the South Dakota
Department of Social Services; and the Agents, Employees,
and Successors of the above, Appellants.
 No. 80-1632.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Sept. 8, 1980.
Decided Nov. 7, 1980.
 
 Steven L. Zinter of Schmidt, Schroyer & Colwill, P.C., Sp. Asst. Atty. Gen., Pierre, S. D., for appellants.
 Mary Ellen McEldowney, Rapid City, S. D., for appellee.
 Before LAY, Chief Judge, GIBSON, Senior Circuit Judge, and HEANEY, Circuit Judge.
 PER CURIAM.
 
 
 1
 William Janklow, the Governor of South Dakota, and James Ellenbecker, the Secretary of the South Dakota Department of Health and Human Services, appeal[1] a decision of the United States District Court for the District of South Dakota[2] finding South Dakota's administration of last winter's federal energy assistance program to low income individuals to be in violation of the applicable federal regulations and the due process clause of the fourteenth amendment. We affirm the district court's finding that South Dakota violated applicable federal regulations concerning the program.
 
 
 2
 * On November 27, 1979, Congress enacted Public Law 96-126, 93 Stat. 954, which contained a section located at 93 Stat. 978-79 that provided for 1.2 billion dollars of federal funding to aid low income persons with their 1979-1980 winter heating bills. The Department of Health, Education and Welfare (HEW) issued instructions and regulations to implement the program on November 30, 1979. See 44 Fed.Reg. 69032 (1979).
 
 
 3
 Under Public Law 96-126, the states were given broad latitude in deciding how to disburse their allocated funds. In order for a state to receive funding, HEW required the state to submit a plan for prior approval. Id. In HEW's instructions concerning the energy assistance program, the states were provided with three HEW-developed disbursement plans. In addition, the states were given an option to develop their own plans, subject to certain limitations, which could be submitted for approval to HEW. Id. at 69037-69038.
 
 
 4
 South Dakota, after withdrawing a prior plan, submitted its own plan for disbursement on December 20, 1979. The plan was approved by HEW on January 1, 1980. The plan provided in part:
 
 
 5
 ADC and Food Stamp recipients who have no energy costs, direct or indirect for the month of December, will receive no energy payment.
 
 
 6
 a. Direct energy costs refer to fuel or utility bills for which someone in the recipient household is responsible to pay.
 
 
 7
 b. Indirect costs refer to rent which includes fuel and utility expenses. Upon request for a conference or fair hearing made within 30 days of the energy payment date, an evaluation will be made to determine if heat furnished through an indirect means is inadequate and there is a demonstrated need to protect the health, safety and well being of the ADC or food stamp recipient by supplementing the heat source with, for example, an appliance such as a space heater.
 
 
 8
 Executive Order and Memorandum of the Governor of South Dakota (January 16, 1980) (emphasis added).[3]
 
 
 9
 Those qualifying for the program were to receive a $300 check in January, 1980. South Dakota notified potentially eligible recipients by sending, on or about January 18, 1980, a letter describing the program to all ADC and food stamp households. This letter was the basis for Grueschow's suit and stated:
 
 Dear ADC and/or Food Stamp Recipient:
 
 10
 ADC and Food Stamp households eligible in December may receive an energy payment check this month. Whether or not you receive this energy payment depends upon the following:
 
 
 11
 (1) ADC and/or Food Stamp recipients whose case situation in December shows they have no energy costs direct or indirect (such as rent which includes fuel/utilities) will receive no energy payment.
 
 
 12
 (2) ADC recipients whose case situation in December shows their shelter costs include utilities and are equal to or less than $163 will receive no energy payment.
 
 
 13
 Checks will be mailed around January 15th. Please allow several days for delivery.
 
 
 14
 If you do not receive an energy payment and want your case reviewed, please contact your local caseworker no later than February 25, 1980. (Emphasis added.)
 
 
 15
 Grueschow, after receiving the letter notice, did not receive a $300 check, even though she now claims to have had indirect heating expenses which would have qualified her for assistance. Grueschow did not make an application for assistance until April, 1980, well after the February 25 cutoff date; the application was denied because it was untimely.
 
 
 16
 On June 17, 1980, Grueschow filed a class action lawsuit claiming the January 18, 1980, letter notice concerning the program was in violation of the due process clause of the fifth and fourteenth amendments and in violation of the regulations promulgated by HEW for implementation of the program. Grueschow alleged that the January 18 letter misled those potential recipients who had indirect heating costs such as, for example, space heaters and extra blankets. She alleged the notice was deficient because it did not apprise persons having indirect energy costs that they might also be eligible for the energy payment. Grueschow requested a temporary restraining order to prevent the state from distributing the remaining funds in the program to previous recipients and the district court issued the temporary restraining order that same day. The court also enjoined HEW from causing a reversion of any unexpended funds to the Treasury of the United States.
 
 
 17
 Trial was held on June 27, 1980, and the district court entered a memorandum opinion and order on June 30, 1980. The trial court certified the class and found that the January 18, 1980, letter notice violated: (1) HEW regulations; and (2) the class's due process rights. The court ordered South Dakota to provide full and complete notice to the class members of their rights to apply for energy payment assistance within thirty days. On July 15, 1980, the state requested the district court to stay its order and the state filed its notice of appeal on July 16, 1980. On July 25, 1980, the district court denied the state's motion for a stay. On August 4, 1980, the state filed a motion for expedited appeal and for a stay of a portion of the district court's order in this Court. We granted the motion on August 7, 1980.
 
 II
 
 18
 On appeal, the state contends that neither Public Law 96-126 and its regulations nor concepts of due process require that personal notice be given to all potentially eligible welfare recipients of the creation of a new welfare program. With this broad argument we are in agreement. Personal notice need not be sent to each potentially eligible recipient because there could be many potentially eligible recipients of whom the state is not aware. However, in publicizing a new welfare program, accurate information must be given so that those potentially eligible for the program can at least, upon hearing about the program, make a reasonable determination of their possible eligibility. Here, there is no statutory or regulatory mandate requiring personal notice. The state's plan to publicize the program by including notices to current welfare and ADC recipients in their monthly envelopes was reasonable.
 
 
 19
 The state further contends that its notice need not detail all of the program's eligibility requirements because detailed eligibility information might unnecessarily confuse the notice recipients. In general, we agree that the notice need not contain detailed eligibility requirements. However, when the state gives notice of a welfare program, the notice must reasonably identify the persons or groups who are potentially eligible for benefits. In short, the information given in the state's notice must be reasonably complete and accurate.
 
 
 20
 We hold the district court correctly determined that the state's January 18, 1980, letter violated applicable HEW regulations and, therefore, do not reach the procedural due process issue. The district court ordered South Dakota to send out a more complete notification of the energy assistance program; we approve that form of relief.
 
 
 21
 HEW promulgated its regulations concerning the program on November 30, 1979. 44 Fed.Reg. 69032 (1979). No public comment period was provided for due to the urgency with which the funds were to be distributed. Id. at 69033. The regulations concerning state developed disbursement programs required that payment amounts be made according to 45 C.F.R. § 233.10. Id. at 69038. In general, "(e)ligibility conditions must be based upon reasonable classifications and must not exclude individuals or groups on an arbitrary or unreasonable basis." Id. at 69035.
 
 
 22
 The district court held that the January 18, 1980, letter notice violation 45 C.F.R. §§ 233.10(a)(1)(vi) and (vii) which provide:
 
 
 23
 (vi) Eligibility conditions or agency procedures or methods must not preclude the opportunity for an individual to apply and obtain a determination of eligibility or ineligibility.
 
 
 24
 (vii) Methods of determining eligibility must be consistent with the objective of assisting all eligible persons to qualify.
 
 The district court concluded:
 
 25
 Without a doubt, the notice given to plaintiff's class failed to meet these requirements. It made no mention of the fact that funds were available to meet "indirect energy costs" and, in fact, made no mention of "indirect" costs beyond a statement that those ADC and food stamp recipients who had no direct or indirect costs should not be eligible for assistance.
 
 
 26
 The low social and educational condition of many of those who must rely on public assistance is well known. Plaintiff herself provides an example of this unfortunate state of affairs. The one reference to "indirect" costs in the notice gives the example of "rent which includes fuel/utilities." It is not at all clear to this Court, looking at this language alone, that this would include situations where there was a "demonstrated need" for a supplementary source of heat, such as space heaters, blankets and warm clothing. This Court can find no justification for placing a burden on the members of the plaintiff's class to be so perceptive that they could divine such broad meaning from the small amount of information given in the notice. Clearly, a person in plaintiff's position, who had rent or utility costs of less than $163 in December, 1979, would understand from the notice that they would be ineligible, and that any application for a payment would probably be futile. (Footnote omitted.)
 
 
 27
 Another provision of 45 C.F.R. § 233.10, not mentioned by the district court, is even stronger authority that the South Dakota letter notice was legally insufficient. 45 C.F.R. § 233.10(a)(1)(iii) provides: "There must be clarity as to what groups are included in the plan, and which are within, and which are outside, the scope of Federal financial participation." (Emphasis added.)
 
 
 28
 The South Dakota notice was fatally ambiguous because it failed to apprise persons of their opportunity to receive monies as compensation for indirect energy costs. The January 18, 1980, letter notice lacked clarity (§ 233.10(a) (1)(iii)) because the groups of persons having potentially compensable indirect energy costs were not sharply identified as eligible recipients.
 
 
 29
 We agree with the district court's finding of fact regarding the misleading nature of the letter notice. This finding is not "clearly erroneous." See Fed.R.Civ.P. 52(a). The regulations promulgated by HEW, while interpretative in nature, contain valid and lawful criteria for administration of the assistance program. See Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944). See generally 2 K. Davis, Administrative Law Treatise § 7:13 (2d ed. 1979).
 
 
 30
 South Dakota violated HEW's regulations concerning the administration of the funds. The misleading letter notice of January 18, 1980, contravened the intention of both Congress and HEW in making energy assistance available to low income individuals last winter.
 
 
 31
 For these reasons, the judgment is affirmed and the stay entered by the court on August 7, 1980, is vacated.
 
 
 
 [1]
 The federal defendants, Patricia Harris, Secretary of the Department of Health and Human Services (HHS), formerly Health, Education and Welfare, and Wellington Webb, Denver Regional Official of HHS, withdrew their appeal on September 8, 1980
 
 
 [2]
 The Honorable Donald J. Porter, United States District Judge, District of South Dakota
 
 
 [3]
 The Governor's Executive Order and Memorandum was not included in the January 18, 1980, letter notice mailed to potential recipients