In re Gertrude Marie MORRIS, Abraham Roland Morris, Debtors.

Abraham MORRIS and Gertrude Morris and Lola Blakeney, Plaintiffs,

v.

PHILADELPHIA ELECTRIC COMPANY, Defendant,

and

Leo F. Doyle, Defendant/Trustee.

Bankruptcy No. 81–00901G.

Adv. No. 81–0475G.

United States Bankruptcy Court, E.D. Pennsylvania.

Aug. 31, 1983.

---

Michael Donahue, Delaware County Legal, Assistance Ass'n, Darby, Pa., for debtors/plaintiffs, Abraham Morris and Gertrude Morris.

Charles V. Stoelker, Jr., Meehan & Stoelker, Philadelphia, Pa., for defendant, Philadelphia Elec. Co.

Leo F. Doyle, Philadelphia, Pa., Trustee.

## OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

The above named debtors have commenced a class action against the Philadelphia Electric Company ("PECO") seeking an injunction against PECO's alleged misapplication of payments which were received from the Pennsylvania Department of Public Welfare ("the DPW") under the provisions of the Home Energy Assistance Act of 1980 ("the HEAA").[1] PECO has moved to dismiss the complaint on the basis that the debtors have failed to state a cause of action upon which relief can be granted. For the reasons stated herein we find PECO's motion meritorious and will dismiss the complaint.

The development of the case is as follows:[2] Congress enacted the HEAA on April 2, 1980. The act created the Low Income Energy Assistance Program ("the LIEAP"). The LIEAP provides for direct grants to states from a federal appropriation for the purpose of giving financial assistance on behalf of eligible households to offset the cost of energy. The program is implemented by regulations promulgated by the Secretary of the Department of Health and Human Services ("the Secretary"). Under the program the federal grants are given to the states which then distribute them on behalf of eligible households. As a condition precedent to a state receiving funds under the LIEAP, the state must submit to the Secretary for his approval a plan outlining the state's intended scheme of implementing the program. In Pennsylvania, the DPW was given the task of drafting such a plan and supervising its operation. The plan was submitted and became effective on November 12, 1980.

Over the course of the winter of 1980–81, Abraham and Gertrude Morris, the debtors,[3] incurred a substantial indebtedness to PECO. With the intention of satisfying

1. Title III of Pub.L. No. 96–223, 94 Stat. 229, 288, April 2, 1980, formerly codified at 42 U.S.C. §§ 8601–8612 (1976 & Supp. IV 1980). This statute was repealed by § 2611 of Title XXVI of Pub.L. No. 97–35, 95 Stat. 357, 902, August 13, 1981, but see correlative provisions to the HEAA in the Low Income Home Energy Assistance Act of 1981, Title XXVI of Pub.L. No. 97–35, 95 Stat. 357, 893, August 13, 1981, codified at 42 U.S.C. §§ 8621–8629.

2. This opinion constitutes findings of fact and conclusions of law as required by Bankruptcy Rule 7052.

3. We outline here only the facts of the Morris' case since the facts of Lola Blakeney's case are

this indebtedness with a LIEAP grant, the debtors filed an application for such benefits in February of 1981. The debtors then filed a petition for relief under Chapter 7 of the Bankruptcy Code on March 13, 1981. At the time of the filing of the petition the outstanding indebtedness to PECO was $400. On behalf of the debtors a LIEAP grant was made directly to PECO on April 4, 1981. Upon receipt of the payment PECO applied it against the debtors' prepetition indebtedness on their energy bill.

The debtors filed the instant class action complaint alleging that PECO's application of the payment against the prepetition indebtedness violated four sections of the Bankruptcy Code and one of the regulations of the LIEAP. The debtors' request that we enjoin PECO from satisfying the debtors' prepetition energy indebtedness with LIEAP grants that are received after the commencement of bankruptcy. The debtors further request that we order PECO to credit the LIEAP grants received in such cases to the debtors' postpetition energy indebtedness.

As stated above, the debtors assert that PECO violated four provisions of the Bankruptcy Code and one provision of the LIEAP. First, the debtors assert that PECO violated the automatic stay of 11 U.S.C. § 362(a) which generally bars all debt collection efforts against the debtors or the property of their bankruptcy estate. More particularly, § 362(a)(7) prohibits "the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor." Second, the debtors contend that PECO violated the antidiscrimination provisions of § 525 by using the LIEAP grant to satisfy the energy bills which the debtors incurred prior to the commencement of bankruptcy. Third, the debtors charge that PECO's application of the payment solely to prepetition indebtedness is a violation of § 524 which, in part, prohibits the commencement or continuation of an action to obtain payment of a discharged debt. Fourth, the debtors assert that

PECO's failure to credit the LIEAP payment to postpetition indebtedness is a violation of § 522(c) which allows a debtor to choose his exemptions in bankruptcy from among the property of his estate. In the case at bar the debtors chose the LIEAP payment as an exemption. As their final contention, the debtors assert that PECO's alleged misapplication of the payment is a violation of the directions of the LIEAP regulations which provide for LIEAP payments only in response to the energy needs of the financially distressed.

As noted above, PECO has moved to dismiss the debtors' complaint. It asserts that each of the five grounds for relief is without merit if the court determines that the LIEAP payments are not property of the debtors' bankruptcy estates. We agree and thus commence our analysis of whether the estates have a property interest in the payments.

Property of the estate is defined at 11 U.S.C. § 541(a). Subject to refinements not relevant here that section states in part that "all legal or equitable interests of the debtor in property as of the commencement of the. case" are property of the estate. § 541(a)(1). The debtors contend that LIEAP payments, although gratuitously made by the government, are entitlements in which they have certain proprietary interests akin to the interests that they would have in property. Consequently, the debtors assert that these entitlements are property of the estate. Assuming that some entitlements are property of the estate even though the entitlements may bear little resemblance to traditional property interest, the application of this concept is necessarily limited by the nature of the entitlement at issue. Thus assuming that LIEAP payments are entitlements, the essential attributes of this entitlement are defined by the HEAA, the governing regulations and the DPW's plan of implementation. PECO asserts that these sources indicate that the debtors' interest in this federal grant program is quite limited once the state has underwritten a determined portion of the

essentially identical to those of the Morris' case.

cost of the debtors' energy needs. The debtors dispute this and contend that their interest in the program is substantial since it authorizes the debtors to receive cash payments under the program from which the debtors can then pay the energy supplier. The HEAA undercuts the debtors' position. It requires each state plan outlining the intended method of implementing the LIEAP to authorize payment of grant funds to:

> (A)(i) home energy suppliers,

> (ii) eligible households whenever the chief executive determines such payments to be feasible, or when the eligible household is making undesignated payments for rising energy costs in the form of rent increases, or

> (iii) any combination of home energy supplier and eligible household whenever the chief executive determines such payments to be feasible, and

> (B) building operators, in [certain] housing projects. . . .

Former 42 U.S.C. § 8607(b)(3) (1976 & Supp. IV 1980). As former § 8607(b)(3)(A)(ii) and (iii) indicate, payments can be made directly to eligible households only if the chief executive[4] determines the feasibility of the direct payment method or if the eligible household is making undesignated payments for rising energy costs in the form of rent increases. In the case at bench the debtors do not assert that they are making undesignated payments for rent increases. Consequently, direct payments of a LIEAP grant to a debtor can only be made upon the approval of the chief executive. The debtors do not claim that the chief executive has approved such direct payments except in limited instances. The only example of direct payment cited by the debtors is the administrative adjudication in the *Appeal of Barbara Plunkett*, No. 1332210, slip op. (Com. of Pa. Dept. of Pub. Welfare March 18, 1981). *Plunkett* differs from the case at bar in that the beneficiary under the LIEAP

grant had sought direct payment of the grant following a winter heating season during which she remained current on the payments of her energy bills. She requested direct payment immediately upon moving to an apartment where the energy cost was included in the price of the rent. A direct award was made to Plunkett, since an award to the energy supplier would have resulted in double payment. Such is not the case here. The debtors' failure to pay their PECO bill precludes the issuance of a direct LIEAP grant to them. This being the case, the grant made to PECO to satisfy the debtors' energy bill is not property of the estate. Since each of the plaintiff's five causes of action are predicated on a finding that the grant was property of the estate, we deny all requested relief and will grant PECO's motion for dismissal.

---

**4.** In the case at bar the chief executive is the Governor of Pennsylvania acting through the DPW. 11 Pa.Admin.Bull. 577 (Feb. 7, 1981).