**In re Gertrude Marie MORRIS, Abraham Roland Morris and Lola Blakeney, Plaintiffs/Appellants,**

v.

**PHILADELPHIA ELECTRIC COMPANY, Defendant/Appellee,**

and

**Leo F. Doyle, Defendant/Trustee.**

**Civ. A. No. 83–4989.**

United States District Court,
E.D. Pennsylvania.

Dec. 28, 1984.

Michael Donahue, Chester, Pa., for plaintiffs/appellants.

Charles V. Stoelker, Philadelphia, Pa., for PECO.

L.F. Doyle, Philadelphia, Pa., Trustee.

OPINION

JOSEPH S. LORD, III, Senior Judge.

The narrow issue before me on this appeal from the bankruptcy court is wheth-

er fuel assistance grants under the Low Income Energy Assistance Program ("LIEAP"), which are paid directly to a utility on behalf of an eligible recipient, constitute property of an estate under § 541(a) of the Bankruptcy Code. After carefully considering the Code, the relevant case law and the underlying purposes of the LIEAP, I hold that LIEAP funds paid to a utility for the benefit of a debtor constitute property of that debtor's estate.

In 1980 Congress enacted the Home Energy Assistance Act. *See former* 42 U.S.C. § 8601 *et seq.* (1976 Supp. IV 1980). The Act created the LIEAP to provide direct grants to states for the purpose of giving financial assistance to low income households beset by increasing energy costs. *See id.* The program was implemented through regulations promulgated by the Secretary of the Department of Health and Human Services. *See* 45 C.F.R. § 260 *et seq.* (1981). Before receiving federal funds states were required to submit implementation plans to the Secretary for approval. States were required to furnish assistance to eligible households through payments either to "home energy suppliers" or to "eligible households whenever the chief executive determines such payments to be feasible, or when the eligible household is making undesignated payments for rising energy costs in the form of rent increases." 45 C.F.R. § 260.152; *former* 42 U.S.C. § 8607(b)(3). The plan submitted by the Pennsylvania Department of Public Welfare ("DPW") became effective on November 12, 1980. *See* 11 Pennsylvania Bulletin at 577 (Feb. 7, 1981).

Under the Pennsylvania plan, applications for energy assistance are made during the heating season (November through March) and the DPW makes one annual payment on behalf of eligible households. Plaintiff Blakeney, one of the named plaintiffs representing a putative class in this suit, applied for LIEAP benefits in December, 1980, and was found to be eligible.[1] Shortly thereafter, on December 16, 1980, plaintiff filed for bankruptcy under Chap-

ter 7 listing the defendant, the Philadelphia Electric Company ("PECO"), as a creditor and listing her LIEAP entitlement as property to be exempt from distribution to creditors. The DPW paid plaintiff's LIEAP entitlement of $124.00 to PECO on February 2, 1981, and PECO credited the entire amount to plaintiff's prepetition debt.

Plaintiffs then filed this class action alleging that PECO's application of the payment to the prepetition obligations violated four sections of the Code as well as one of the LIEAP's regulations. The bankruptcy court dismissed the suit finding that the LIEAP payments were not property of the debtors' estates as defined by the Code. 32 B.R. 635 (Pa.1983).

■ Section 541 of the Code defines property of a debtor's estate as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). This provision is extremely broad and includes all types of property interests except for those specifically excluded elsewhere in § 541. *See Collier on Bankruptcy,* § 541.01 at p. 541–5 (15th edition). When a putative property interest is not specifically covered by § 541, non-bankruptcy law, both state and federal, must be examined to determine whether the debtor has a legitimate property interest. *See id.* at § 541.01 at p. 541–10.

In determining what due process protections must be afforded recipients of government entitlements, the Supreme Court has construed broadly the concept of property interests protected by the Constitution. *See e.g., Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). In line with these decisions, several district courts have held that recipients and potential recipients of LIEAP funds have a property interest in those funds protected by the due process clause. *See e.g., Grueschow v. Harris,* 492 F.Supp. 419, 424–25 (D.S.D.) *aff'd on other grounds* 633 F.2d 1264 (8th

1. I outline here only the facts of Blakeney's case  since the facts of the Morris' case are similar.

Cir.1980); *Humes v. Heckler*, C.A. No. 81–932 (District of Connecticut 8/3/83).

On its face, a property interest protected by the Constitution appears to fall well within the ambit of § 541. Other sections of the Code also support the contention that property interests in entitlement programs that are protected by the due process clause constitute property of a debtor's estate under § 541. Section 522 of the Code lists the types of property interests a debtor is entitled to exempt from his estate, notwithstanding § 541's broadly worded definition. Specifically enumerated are a debtor's right to receive local public assistance benefits as well as the right to receive funds from other government entitlement programs. 11 U.S.C. § 522(d)(10). It would have been totally unnecessary for Congress to permit debtors to exempt property interests in government entitlement programs from estate property if it had not intended the broad definition of estate property in § 541 to encompass the entitlement programs listed in § 522.

In *In Re Hammonds*, 729 F.2d 1391 (11th Cir.1984), a government agency that monitored Aid to Families with Dependent Children ("AFDC") argued that a debtor's AFDC checks did not constitute estate property as defined by the Code. Focusing on § 522, the court rejected the agency's contention.

> Section 522 would be meaningless if we were to hold that property exempted (local public assistance benefits) was not intended to be considered as estate property ... Since the Bankruptcy Reform Act specifically allows the debtor to exempt local public assistance benefits from his or her estate, we must conclude that welfare benefits are included in the debtor's ... estate.

729 F.2d at 1393 (citations omitted).

Without specifically relying on § 522, the bankruptcy court in *In Re Maya*, 8 B.R. 202 (E.D.Pa.1981), also held that the right to receive funds under a government entitlement program was estate property as defined by § 541. *Maya* concerned payments under the Emergency Crisis Assistance Program ("ECAP"), an energy assistance program similar to the LIEAP. The debtors in *Maya* filed for bankruptcy seeking to have their gas debts discharged while at the same time seeking to have any payments to which they were entitled under ECAP deemed exempt property under § 522. The debtors sued the Philadelphia Gas Works ("PGW") which had received a payment under the ECAP for the benefit of the debtors, but had applied part of the payment to satisfy the debtors' prepetition debt. PGW moved to dismiss the suit claiming that the bankruptcy court lacked jurisdiction. The court rejected that argument relying in part on § 541's broad definition of estate property. "Under that broad definition of property, the debtors' claimed interest to the $300 ECAP payment or to the gas which would be provided for that amount is clearly property. Consequently, [the court concluded that it had] jurisdiction over all of the debtors' claims with respect to that property." 8 B.R. at 207.

*Maya* is indistinguishable from the case presently before me. Both the clear language of the Code and the relevant case law support plaintiffs' contention that their LIEAP payments are property under the Code. The Code's broad definition of property includes all legal or equitable interests in property and there is no reason to think that it does not include property interests recognized by the Constitution.

PECO, however, argues that certain features of LIEAP payments distinguish them from property interests normally recognized by the Code. Unlike general welfare benefits, LIEAP funds may only be used to meet or offset heating bills incurred during the 1980–81 heating season. State regulations guarantee adherence to these restrictions by forwarding LIEAP funds, in most cases, directly to home energy suppliers. The regulations do not permit a direct payment of funds to these plaintiffs and make no provision for using the funds to offset future heating bills.

The existence of these restrictions, however, fails to demonstrate, in and of itself, that LIEAP funds are not property interests recognized by the Code. Section 541 states that "an interest of the debtor in property becomes property of the estate ... notwithstanding any provision (A) that restricts or conditions transfer of such interest by the debtor." 11 U.S.C. § 541(c)(1)(A). Except for an express exception for spendthrift trusts, this general rule provides "that restrictions on the transfer of the debtor's property will be inoperative to prevent inclusion of the property in the estate." *Collier on Bankruptcy*, § 541.22 at p. 541–99 (15th edition). Even if plaintiffs' property interest can only be used to offset postpetition energy costs incurred during the 1980–81 heating season, it still constitutes a property interest recognized by the Code.

This does not mean that restrictions on LIEAP funds are irrelevant. If state law prevents the plaintiffs from receiving their LIEAP entitlements as cash payments or from using them to offset future energy costs, a holding that the LIEAP entitlements are estate property will not prevent the state from enforcing these restrictions.

An argument similar to PECO's was rejected by the Eleventh Circuit in *In Re Hammonds, supra*. There the government argued against classifying AFDC funds as property of a debtor's estate by claiming that doing so might result in those funds being used for purposes not permitted by the AFDC program. 729 F.2d at 1393–94. The court rejected this argument by noting that "the standard procedures for monitoring the use of AFDC payments [were] not undermined by allowing a [welfare] recipient access to Chapter 13." *Id.* at 1394. Classifying welfare funds as estate property does not prevent the government from assuring that those funds are used only as permitted by law. *Id.*

Finally, PECO argues that plaintiffs' putative property interest in LIEAP funds should not be recognized under the Code because plaintiffs have already received the services for which the funds were meant to be used. Even if the funds had been delivered to plaintiffs, they would only have legal title to them. The funds would actually be held by plaintiffs in a constructive trust for PECO's benefit. PECO analogizes the facts of this case to an example used by Collier of a doctor who decides to treat a patient whose health care expenses are covered by insurance. Once the patient receives the doctor's services the insurance proceeds become the doctor's property, even if they are sent to the patient who must hold them in trust for the doctor's benefit. *Collier on Bankruptcy*, § 541.06 at p. 541–27 (15th edition).

Pennsylvania law, however, does not support PECO's position. In Pennsylvania the courts will declare a constructive trust only when " 'a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it.' ... The burden of establishing the existence of facts upon which a constructive trust will be declared is on the one who seeks such a declaration." *Murphy v. Landsburg*, 58 F.R.D. 165, 170 (E.D. Pa.), *aff'd*, 490 F.2d 319 (3d Cir.1973), *cert. denied*, 416 U.S. 939, 94 S.Ct. 1941, 40 L.Ed.2d 289 (1974) (citations omitted). "Although it is not stated clearly in every opinion," a constructive trust will be declared only if the party against whom it will be imposed has acquired the property in question "in some way that creates [an] equitable duty in favor of the party" seeking the constructive trust. *Pierro v. Pierro*, 438 Pa. 119, 264 A.2d 692, 696 (1970).

■ In a bankruptcy proceeding a constructive trust will not be declared simply because a debtor is avoiding part of his obligations to his creditors. That is a necessary outcome of all successful bankruptcy proceedings. In rejecting a creditor's argument seeking the imposition of a constructive trust, the court in *In Re Lewis Jones, Inc.*, 362 F.Supp. 919 (E.D.Pa.1973), *aff'd*, 492 F.2d 1238 (3d Cir.1974), observed that the "debtor in these proceedings was [not] any more 'unjustly enriched' than any debtor in any Chapter XI proceeding who has not paid its creditors, and for that reason the funds should not be impressed

with a constructive trust." 362 F.Supp. at 921.

PECO has failed to meet its burden of establishing facts sufficient to justify the imposition of a constructive trust. Until the time the plaintiffs applied for LIEAP funds there was nothing unusual about the relationship between PECO and the plaintiffs that would justify the imposition of a constructive trust. Plaintiffs' failure to pay that portion of their bill and their subsequent filing for bankruptcy does not create an equitable duty in favor of PECO any more than it creates an equitable duty in favor of any of plaintiffs' other creditors. Unlike a doctor who supplies medical services knowing his bill will be paid by his patient's health insurance, PECO cannot claim that all of plaintiffs' prepetition services were supplied with the expectation that they would be paid for with LIEAP funds. Before plaintiffs applied for LIEAP funds PECO had no way of knowing whether they would apply or be found eligible.

PECO might be able to establish an equitable claim to that part of the LIEAP funds sufficient to pay for services provided during the period between plaintiffs' applications for LIEAP funds and their filings for bankruptcy. It is only during that period that PECO could have supplied services with the legitimate expectation that they would be paid for with LIEAP funds. In plaintiff Blakeney's case that, at most, amounts to sixteen days of services over a five month period. PECO's putative equitable claim, however, could not extend to the remaining LIEAP funds which plaintiffs want to use to meet their postpetition obligations to PECO. Allowing plaintiffs to use their LIEAP funds to pay postpetition heating bills, incurred during the 1980–81 heating season, would not result in plaintiffs' unjust enrichment.

Permitting PECO to apply plaintiffs' LIEAP funds to their prepetition debt would not only be contrary to the clear language of the Code and the relevant case law, but would also undercut the underlying purpose of the LIEAP. The LIEAP was created in order to assist low income families in paying their heating bills. *For-mer* 42 U.S.C. § 8601(b). It was not created to assist utilities in collecting otherwise uncollectable debts. Federal regulations spell out the intent of the program unambiguously.

> The benefit of any payment made to or on behalf of an eligible household must accrue to that eligible household. Under this requirement, when a payment in behalf of a household is made to another party, the household must realize full compensation corresponding to the amount paid to the other party.

45 C.F.R. § 260.158(b).

Once plaintiffs filed for bankruptcy they were no longer under a legal obligation to pay PECO the prepetition debt they had incurred. By applying plaintiffs' LIEAP payments to plaintiffs' dischargeable utility bills, PECO defeated the underlying purpose of the LIEAP. Instead of LIEAP funds being used to pay postpetition debts which plaintiffs still have an obligation to satisfy, the funds were used to offset debts plaintiffs had no legal obligation to pay. PECO collected on an otherwise uncollectable debt, while plaintiffs gained no relief in meeting their legal obligations. Far from being "fully compensated," plaintiffs were not compensated in the least when their LIEAP funds were used to offset their prepetition obligations to PECO.