In re Denise HOWELL, Ruthe G. Cavender, a/k/a Ruthe G. Griffin, Vittoria Defeo, Debtors.

Denise HOWELL, Ruthe G. Cavender, a/k/a Ruthe G. Griffin, Vittoria Defeo, and Gary J. Gaertner, Chapter 13 Trustee, Appellees,

v.

COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF PUBLIC WELFARE, Appellant.

Civ. A. No. 91–2102.

United States District Court, W.D. Pennsylvania.

March 17, 1992.

---

Cecilia Adams and Evalynn Welling, Pittsburgh, Pa., for debtors.

Richard J. Bedford, Pittsburgh, Pa., for trustee.

Jason W. Manne, Pittsburgh, Pa., for appellant.

## MEMORANDUM OPINION

BLOCH, District Judge.

This is an appeal from an order of the bankruptcy court attaching welfare benefits under the Aid to Families with Dependent Children (AFDC) Program to fund debtors' Chapter 13 bankruptcy claims. In each case, the debtor is a recipient of AFDC from appellant, Pennsylvania Department of Public Welfare (DPW), and in each case, the debtor sought to use a portion of the monthly AFDC grant to fund her Chapter 13 bankruptcy plan.

These Chapter 13 cases were filed by Ruthe G. Cavender, on July 6, 1990, Denise Howell, on October 29, 1990, and Vittoria Defeo, on June 3, 1991. Gary J. Gaertner serves as Chapter 13 trustee, and is appellee in this case.

The trustee filed motions to attach the debtors' AFDC benefits to fund the plans. Bankruptcy Judge Cosetti ordered such attachment on September 12, 1990 (Cavender), January 8, 1991 (Howell), and July 10, 1991 (Defeo). After no action was taken by DPW, the trustee filed a motion to enforce the September 12, 1990, attachment order, on January 9, 1991. On September 12, 1991, Judge Cosetti entered an order consolidating these three cases for purposes of enforcement of the income attachment orders directed to DPW.

An evidentiary hearing was held before Judge Cosetti on July 22, 1991. On November 4, 1991, Judge Cosetti granted the trustee's motion and ordered DPW to obey the Court's income attachment orders. 136 B.R. 120. DPW filed the instant appeal on November 14, 1991. Jurisdiction rests with this Court pursuant to 28 U.S.C. § 158(a).

Before turning to the substantive legal issues, some information on the three debtors will provide important background.

Ruthe Cavender is mother of two children, ages 15 and 16. She is unemployed, her sole source of income being public assistance, that being AFDC in the amount of $316 per month, and supplemental security income in the amount of $418 per month. The Chapter 13 plan provides that $97 per month will be deducted from Cavender's AFDC check and sent to the trustee. For the first 13.05 months, this money will be paid to the Housing Authority of the City of Pittsburgh for rent arrearages. The money collected by the trustee for the remaining 4.95 months of the plan will be used to pay Cavender's Class 4 claims,

treating all such claims as one class, each sharing the pro rata sum. The trustee will receive compensation of 10 percent of the amounts paid by the debtor. Cavender was involved in a prior bankruptcy proceeding, filed August 1, 1988, wherein Chapter 7 discharge was granted.

Denise Howell is a single mother of two children, ages 6 and one year. She is unemployed, her sole source of income being AFDC in the amount of $401 per month. The Chapter 13 plan provides that $40 per month will be deducted from her AFDC check and sent to the trustee, for a period of 36 months. This money will be paid to Lovett and Clementine Williams to pay a debt of $1,078.50 for unpaid rent. After payment of this debt, the $40 per month will be applied to PHEAA to pay for a past due student loan. Howell has a "male companion" who sometimes contributes to the household expenses, and is also a named debtor in the judgment obtained by Williams, although he is not a debtor in the Chapter 13 plan. The trustee will receive compensation of 10 percent of the amounts paid by the debtor.

Vittoria Defeo is a divorced mother of five children, ages 15, 14, 13, 12, and 9. Defeo also has a one year old granddaughter whom she cares for. Defeo is unemployed, her sole source of income being a monthly AFDC check of $735. The Chapter 13 plan provides that $152 per month will be deducted from her AFDC check and sent to the trustee, for a period of 60 months. This money will be disbursed by the trustee as follows: $83 per month to pay for back taxes to the City of Pittsburgh (for a total of $3,562) and Allegheny County (for a total of $1,443); $50 per month to the City of Pittsburgh for sewage (to pay for total default of $880) and the Pittsburgh Water Authority (to pay for total default of $2,076); and $8 per month to ITT Consumer Discount to cover $500 in debt for household items. The trustee will receive compensation at the prevailing rate, approximately $12 per month.

DPW has appealed Judge Cosetti's order, stating that "[w]elfare funds which are paid directly to the Chapter 13 trustee do not qualify as [AFDC] under the federal AFDC statute period.... It is an abuse of discretion for the bankruptcy court to order attachment in such circumstances." (Brief of appellant at 3).

## I. Chapter 13 bankruptcy

The United States Code defines a debtor under Chapter 13 as "an individual with regular income that owes, on the date of filing of the petition [less than certain sums of money]." 11 U.S.C. § 109(e). An "individual with regular income" is defined in the Code as an individual whose income is sufficiently stable and regular to enable such individual to make payments under a Chapter 13 plan, other than a stockbroker or a commodity broker. 11 U.S.C. § 101(30).

"The commencement of a case under [Chapter 13] creates an estate." 11 U.S.C. § 541(a). That estate includes, *inter alia*, "all legal or equitable interests of the debtor in property." 11 U.S.C. § 541(a)(1).[1] Section 522 of the Code lists the types of property interest the debtor is entitled to exempt from his or her estate, notwithstanding § 541's broadly-worded definition. Specifically enumerated are a debtor's rights to receive local public assistance benefits, as well as the right to receive funds from other government entitlement programs. 11 U.S.C. § 522(d)(10).

■ Since the Bankruptcy Code specifically allows the debtor to exempt local public assistance benefits from his or her estate, the Court must conclude that welfare benefits are included in the debtor's Chapter 13 estate. *See In re Hammonds*, 729 F.2d 1391, 1393 (11th Cir.1984); *In re Zawisza*, 73 B.R. 929, 934–35 (Bkrptcy.E.D.Pa.1987). "It would have been totally unnecessary for congress to permit debtors to exempt property inter-

---

**1.** The Code lists several things that are specifically not to be included in the property of the estate, for example, "any power that the debtor may exercise solely for the benefit of an entity other than the debtor." 11 U.S.C. § 541(b)(1). This list does not include public assistance or welfare benefits.

ests in government entitlement programs from estate property if it had not intended the broad definition of estate property in § 541 to encompass the entitlement programs listed in § 522." *Morris v. Philadelphia Electric Co.*, 45 B.R. 350, 352 (E.D.Pa.1984). *See also Rowe v. Conners*, 110 B.R. 712, 717 (Bkrptcy.E.D.Pa.1990); *In re Sassower*, 76 B.R. 957, 960 (Bkrptcy.S.D.N.Y.1987); 5 *Collier on Bankruptcy*, ¶ 1300.12[24]; 57 ALR Fed. 339 § 5. The bankruptcy court, when deciding *In re Hammonds, supra,* provided further support for this finding. "[I]f the United States Supreme Court has held that debtors have sufficient property interests in AFDC checks to assert due process challenges if the payments are reduced or withheld[, *see, e.g., Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970),] they also have sufficient property interests for them to be considered 'property of the estate' under the Bankruptcy Code." *Matter of Hammonds*, 23 B.R. 674, 677 (Bkrptcy.M.D.Ga.1982). *See also Morris*, 45 B.R. at 352. As property of the estate included in a debtor's plan, "the court may order any entity from whom the debtor receives income to pay all or part of such income to the trustee." 11 U.S.C. § 1325(c).

■ Given that the AFDC benefits are property of the estate, the issue becomes whether some other federal law removes them from the operation of § 1325(c). *Michigan Employment Sec. Com'n v. Jenkins*, 64 B.R. 195, 199 (W.D.Mich.1986).

As DPW has suggested (reply brief at 2), the Court will now look to the AFDC statute and regulations to see if Congress has prohibited such attachment.

*II.  AFDC Code and Regulations*

The United States Code states: "The term 'aid to families with dependent children' means money payments with respect to a dependent child or dependent chil-

dren." 42 U.S.C. § 606(b). The Code further provides that

> payments with respect to a dependent child which are intended to enable the recipient to pay for specified foods, services, or items recognized by the state agency as a part of the child's need under the state plan may ... be made ... in the form of checks drawn jointly to the order of the recipient and the person furnishing such goods, services, or items....

*Id.* Under the Code, these payments can be made "to another individual who ... is interested in or concerned with the welfare of such child or relative, or ... directly to a person furnishing food, living accommodations, or other goods, services or items to or for such child, relative or other individual...." 42 U.S.C. § 606(b)(2). The Code has removed any state agency discretion to allow third-party payments when such payments are *requested* by "the family member to whom payment would otherwise be made in an unrestricted manner." 42 U.S.C. § 606(b).

The regulations provide for three options to facilitate third-party payments: protective payment, vendor payment, and two-party payments. 45 C.F.R. § 234.60(a)(1).[2] The regulations specifically provide the recipient with certain leeway to devise a disbursement plan for their AFDC benefits.

> (i) The state may use any combination of protective, vendor, or two-party payments (at the request of the recipient),
>
> (ii) The request must be in writing from the recipient to whom payment would otherwise be made in an unrestricted manner and must be recorded or retained in the case file....

45 C.F.R. § 234.60(a)(14).

The AFDC Code and Regulations provide an AFDC recipient with liberal rights to construct a payment plan that includes disbursement to third parties. In conjunction

---

**2.** Protective payment is used when there is a determination that the recipient has mismanaged funds, thereby endangering the well-being of the dependent child under the federal program. Vendor payment is a voluntary request by a client to divert part of their public assistance check to a vendor. Two-party payments provide that both the recipient and a second party must sign the benefit check in order for it to be cashed. (*See* transcript of proceedings, 7/22/91, at 126–29 (testimony of Anita Sheppe, income maintenance caseworker for DPW)).

with the authorization within the Chapter 13 Bankruptcy Code to subject welfare benefits to attachment, the Court finds that no federal law removes AFDC benefits from operation of 11 U.S.C. § 1325(c).

Instructive is 42 U.S.C. §§ 407 and 1382(d) which expressly preclude the assignment of benefits payable under subchapters II (disability benefits) and XVI (supplemental security income (SSI) benefits) of the Social Security Act from the operation "of any bankruptcy law." Title 42 U.S.C. § 407 was amended in 1983 to add subsection (b) which states, "No other provision of law, enacted before, on, or after April 20, 1983, may be construed to limit, supersede, or otherwise modify the provisions of this section except to the extent that it does so by express reference to this section." Had Congress saw fit to include subchapter VI (AFDC) to this non-assignability clause, they could have referenced § 407 within subchapter VI, as they did for subchapter XVI. *See, e.g.,* 42 U.S.C. § 1382(d). *See generally* 5 *Collier on Bankruptcy* ¶ 1300.12[24] ("However, [disability and SSI] benefits, once received, may be voluntarily paid to the Chapter 13 trustee to comply with the terms of a proposed plan, and would become property of the estate upon such payment. Therefore, a debtor receiving such benefits qualifies as an 'individual with regular income' eligible for Chapter 13."); *In re Buren,* 725 F.2d 1080, 1086 (6th Cir.), *cert. denied,* 469 U.S. 818, 105 S.Ct. 87, 83 L.Ed.2d 34 (1984); *In re Barron,* 85 B.R. 603, 605–606 (Bkrptcy.N.D.Ala.1988).

Although the question is not directly before the Court, the Court notes that today's finding necessarily implies that Pennsylvania will not lose matching funds for any AFDC benefits which are paid directly to the trustee, because such an attachment is not in violation of the AFDC statute or regulations. DPW has submitted to the Court a letter from the federal Department of Health and Human Services (Department), dated December 14, 1987, wherein the Department states that federal funds are disallowed for any *involuntary* vendor payments to pay rent arrearages. *Cf.* 45 C.F.R. § 234.60(b) ("Federal financial participation is available in payments which otherwise qualify as money payments with respect to an eligible dependent child, but which are made as protective, vendor or two-party payments under this section."). The Department relies exclusively on the fact that the Pennsylvania state plan does not include any provision for payment of rent arrearages. The Department states in that letter:

> An arrearage is considered to be a past debt. Past debts can be provided for, however, if the state elects to include them in its approved state plan making it available to all recipients on a state-wide basis.

This letter merely stands for the proposition that the Department may disallow federal matching funds when there has been an *involuntary* third-party payment that is not consistent with the AFDC statute or the Pennsylvania state plan. (*See* reply brief of DPW at 3). The instant case involves a *voluntary* third-party payment pursuant to § 1325(c) of the Bankruptcy Code, and consistent with the AFDC statute and regulations.

### III. Debtors' right to terminate the attachment

There is one element of this appeal that causes concern to the Court, despite the disposition in favor of the debtors and the trustee. Under both the AFDC regulations and the Bankruptcy Code, the debtor/recipient retains an unwaivable right to terminate the attachment of her AFDC benefits. The Code of Federal Regulations provides that any third-party payment of AFDC benefits requested by the recipient "will be discontinued promptly upon the written request of the recipient who initiated it." 45 C.F.R. § 234.60(a)(14)(iii). Further, 11 U.S.C. § 1307(b) provides that "[o]n request of the debtor at any time ... the court shall dismiss a case under [Chapter 13 bankruptcy]. Any waiver of the right to dismiss under this subsection is unenforceable." Despite this clear rule of law, Defeo testified at the hearing before Judge Cosetti:

Q: Okay. Did your attorney explain to you what it would take to terminate the—attachment once it started?

A: I don't understand that.

Q: Did she explain to you that you could stop the attachment and get the $130—$153 back if you wanted it?

A: You mean I could get the money back?

Q: That you could paying to the bankruptcy court if you wanted to, did she explain that to you?

A: I don't understand that.

(Transcript of proceedings (Transcript), 7/22/91, at 93).

The fact that Chapter 13 attachment of income is voluntary, and can be terminated at any time and for any reason by the debtor is a necessary prerequisite to the affirmation of any Chapter 13 bankruptcy plan. *See Hammonds*, 729 F.2d at 1393; *Jenkins*, 64 B.R. at 199. Defeo's testimony evidences that she does not understand this condition. Although this does not serve to undermine the affirmation of the attachment orders, it does serve to cause concern to the Court.

▮ All three of the debtors in this case should be given a full briefing on this aspect of their bankruptcy plans. Further, all three debtors should be provided with detailed information as to the proper procedure to use should they desire to execute the dismissal of their plans, and, thereby, vacate the attachment of their AFDC checks. Only after the debtors are so apprised will the debtors be assured of their unwaivable right "to retain funds if they prove necessary for his or her immediate survival." *In re Buren*, 725 F.2d at 1086.

### IV. Conclusion

The purpose of a Chapter 13 plan is "to permit an individual to pay his debts and avoid bankruptcy by making periodic payments to a trustee under bankruptcy court protection, with the trustee fairly distributing the funds deposited to creditors until all debts have been paid." S.Rep. No. 95–989, 95th Cong., 2d Sess. 12, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5798. Under the original Bankruptcy Act, Chapter 13 plans were restricted to wage earners. Thus, one of the primary defects of the old law was that it did "not permit some individuals with regular income to qualify, such as small business owners or social welfare recipients, because their principal incomes do not come from wages, salary, or commissions." *Id.* at 13, 1978 Code Cong. at 5799. To remedy this defect, Congress modified the Code so that "any individual with regular income" could file a voluntary petition for relief under Chapter 13. 11 U.S.C. § 109(e). This modification provides that "[e]ven individuals whose primary income is from investments, pensions, social security or welfare may use Chapter 13 if their income is sufficiently stable and regular." H.Rep. No. 95–595, 95th Cong., 1st Sess. 119, 1978 Code Cong. at 6080, *quoted in United States v. Devall*, 704 F.2d 1513, 1516 (11th Cir.1983), *superseded by statute as stated in In re Sampson*, 95 B.R. 66 (Bkrptcy.W.D.Mich.1988).

The Eleventh Circuit stated, in *In re Hammonds, supra:*

We are not convinced that a child is not benefited when his parent uses a portion of the AFDC check to fund a Chapter 13 plan.... [A] Chapter 13 plan is not a detrimental use of AFDC funds. Rather, it is another form of budgeting that a parent may elect for the benefit of the family unit. When the family unit is strengthened through the gradual elimination of any debt problems, the needs and desires of the children may, indeed, be satisfied and fulfilled [*see* 42 U.S.C. § 601 (In addition to aiding children, AFDC seeks to maintain and strengthen the family unit.) ]. Moreover, the fact that AFDC benefits are "regular income" for purposes of Chapter 13 does not command that a bankruptcy judge automatically approve a plan funded by such payments.... The supervision of the bankruptcy judge, who must insure that the payment plan is feasible given the needs of the individual debtor, is a safeguard against a volun-

**490**

tary Chapter 13 plan operating to the detriment of the debtor's children.

*In re Hammonds,* 729 F.2d at 1394–95. Further safeguards are provided in the AFDC statute. If DPW is displeased with the parent's use of the AFDC benefits, the AFDC statutes provides certain remedies, including counseling the parent, providing a guardian for the children, or imposing a criminal or civil penalty. 42 U.S.C. § 605.

Finally, the Court notes that the success of a Chapter 13 plan often times depends on an income attachment order. *In re Sampson,* 95 B.R. at 68 (80 percent success of plan if there is an order for payment, 20 percent when there is not); *In re Barron,* 85 B.R. at 607 n. 14; Transcript at 21, 80–81 (Defeo prefers to pay her debts through wage order attachment because "I have a lot of problems in—too much for my head and I want them to just do that so I won't forget it.").

The bankruptcy court's order that DPW must comply with the income attachment orders will be affirmed.