**MISSOURI PACIFIC RAILROAD COMPANY, a Delaware corporation, Plaintiff,**

v.

**ESCANABA & LAKE SUPERIOR RAILROAD COMPANY, a Michigan corporation, Defendant.**

**UNION PACIFIC RAILROAD COMPANY, A Utah corporation, Plaintiff,**

v.

**ESCANABA & LAKE SUPERIOR RAILROAD COMPANY, a Michigan corporation, Defendant.**

**No. M88–173–CA2, M88–174–CA2.**

United States District Court, W.D. Michigan, N.D.

Dec. 16, 1988.

James D. Benak, Omaha, Neb., for plaintiffs.

Robert L. Bach, St. Paul, Minn., for defendant.

## OPINION OF THE COURT

ROBERT HOLMES BELL, District Judge.

Now before the Court are two distinct but parallel actions for recovery of railroad interline freight revenues allegedly owed to the respective plaintiffs by the common defendant, Escanaba & Lake Superior Railroad Company. Plaintiffs have moved for summary judgments, asserting there is no genuine issue as to any material fact and they are entitled to judgments as a matter of law. Indeed, the *material* facts are not disputed, and the legal issues presented are identical in both cases. Therefore, this Opinion addresses both motions for summary judgment.

## I. FACTUAL BACKGROUND

It appears that all the parties, plaintiffs Missouri Pacific Railroad Company (Missouri–Pacific) and Union Pacific Railroad Company (Union–Pacific), and defendant Escanaba & Lake Superior Railroad Company (E & LS) are common carriers by rail who have participated with each other in interline shipments of freight. Interline shipments involve the cooperation of two or more railroads in transporting freight from place of origin to destination. The total freight charges for the transportation are paid by the shipper to either the originating carrier or the destination carrier. Under the "bill and voucher" method, employed in this case, interline carriers settle revenue accounts once per month by exchanging statements (a) of transportation provided for which no payment was received, and (b) of revenues received for transportation services rendered by other carriers. By the fourteenth working day of each month each participating carrier is to pay to each other carrier any balance of revenues received in excess of revenue entitlements vis-a-vis each particular carrier.

Here, both plaintiffs allege E & LS has failed to timely pay interline freight revenues due them. Missouri–Pacific has alleged in its complaint that E & LS owes it a balance of $968,054.05, an amount accumulated since November, 1984. Union–Pacific has alleged it is owed $570,208.60, accumulated since April, 1984. Plaintiffs ask the Court to declare these funds to have been held by E & LS in trust for them and to be immediately due and owing.

In addition, Missouri–Pacific has stated a second claim based on a promissory note executed by E & LS on June 1, 1986. The note establishes an installment plan for repayment of interline revenues then accumulated ($1,090,895.17), at the interest rate of 10% per annum. The note expressly provides "that if default be made on the payment of any installment as required herein, the principal sum then due and owing shall at the election of the holder at once become due and payable." E & LS has allegedly made payments on the note totalling $600,000, but has made no pay-

ment since May, 19, 1987. E & LS is said to be in default at the time of the complaint in the amount of $576,847.71. To the extent E & LS may have dissipated the "trust funds" claimed in count I of its complaint, Missouri–Pacific asks the Court to declare this latter amount due and owing under the terms of the note.

## II. SUMMARY JUDGMENT STANDARD

Plaintiffs' motions for summary judgment require the Court to look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). If plaintiffs carry their burden of "showing" that there is an absence of evidence to support the asserted defense, then E & LS may not simply rely on its pleadings, but must demonstrate, by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). An issue of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for E & LS. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). An issue of fact concerns "material" facts only if establishment thereof might affect the outcome of the lawsuit under governing substantive law. *Id.*

## III. "TRUST FUNDS" THEORY

It must be made clear from the outset that E & LS has admitted it owes interline revenues to both plaintiffs in amounts approximately equal to those claimed. E & LS simply lacks the present ability to repay them. Thus, the *fact* of liability is not contested. At issue here is the *nature* of the E & LS obligations. E & LS contends its relationship to each of the plaintiffs is that of "debtor-creditor." As such, plaintiffs are said to have no greater claim to the limited assets of E & LS than any of its other several creditors. Plaintiffs have a

different view. They argue the funds owed them are not simply consideration for goods conveyed or services rendered to E & LS. Rather, the funds owed came into the possession of E & LS as payment from third-party shippers for interline transportation services rendered to the shippers by plaintiffs. Thus, E & LS is said to have acquired possession of the funds as "trustee" for plaintiffs, who claim an interest superior to that of other creditors.

In determining which of these contrasting views prevails, the Court finds significant guidance in appellate case law. What would appear to be controlling precedent is presented in *In the Matter of the Ann Arbor Railroad Co.*, 623 F.2d 480 (6th Cir.1980). The Sixth Circuit Court held in *Ann Arbor Railroad* that interline freight charges collected by one carrier for transportation services rendered by another are held in trust. In evaluating the circumstances which led to this conclusion, the court noted (a) that the commingling of funds by the collecting carrier did not defeat the finding of a trust, because the commingling was to have been temporary under the established account-settling practice; (b) that the interline railroads evinced no intent to create a debtor-creditor relationship and no interest was payable on the outstanding funds; and (c) that neither the equities nor logic supported the contention that one railroad may retain funds belonging to another. *Id.*, 623 F.2d at 482. All of these circumstances are present in this case as well.[1]

In addition to these three express observations, the *Ann Arbor Railroad* opinion incorporates by reference the reasoning of the landmark "Trust Funds Case," *In re Penn Central Transportation Co.*, 486 F.2d 519 (3d Cir.1973), *cert. den.* 415 U.S. 990, 94 S.Ct. 1588, 39 L.Ed.2d 886 (1974). The majority opinion in the *en banc Penn Central* ruling concluded interline freight charges are held in trust based on application of "traditional common law trust principles." Based substantially on the circum-

stances referred to in *Ann Arbor Railroad, supra,* the *Penn Central* majority concluded an implied-in-fact trust relationship existed. In a concurring opinion, Circuit Judge Adams employed a second line of reasoning, distinct from common law trust principles, to reach the same result. That is, interline carriers were granted a superior status vis-a-vis other creditors so as to promote and maintain an adequate, economical and efficient national transportation system, a policy established in the Interstate Commerce Act. 49 U.S.C. preceding § 1. The *Ann Arbor Railroad* ruling is premised upon both *Penn Central* lines of reasoning.

E & LS argues *Ann Arbor Railroad* is not controlling because distinguishable. The *Ann Arbor Railroad* and *Penn Central* rulings pertain to Class I railroads, which are contractually bound to observe the rules of the Association of American Railroads (AAR) and the account-settling practices established thereby. E & LS is a Class III railroad. It is not bound by the AAR rules. However, a careful reading of both rulings reveals this distinction is immaterial. Whether an interline railroad is bound to use the "sight draft" method prescribed by the AAR rules, or, like E & LS, employs the bill and voucher method, the reasons cited for impressing a trust are equally applicable. That E & LS is a Class III railroad is not determinative of the nature of its relationship to other interline carriers; the realities of the parties' interactions are. Comparing the present facts and circumstances to those found pertinent to the rulings in *Ann Arbor Railroad* and *Penn Central,* the Court finds the cases not materially distinguishable. Here, *Ann Arbor Railroad* remains binding precedent for this Court.

Notwithstanding the doctrine of *stare decisis,* E & LS urges the Court to adopt the contrary rule declared by the Seventh Circuit Court in *In re Iowa Railroad Co.*, 840 F.2d 535 (7th Cir.1988). *Iowa Railroad*

---

**1.** The promissory note made by E & LS with respect to its obligations to Missouri–Pacific may be viewed as evidence of a debtor-creditor relationship. A fairer view, however, finds it to

represent merely a remedial effort to enforce E & LS's past-accruing obligations, rather than to indicate the nature of these obligations.

represents a well-reasoned but, in this Court's opinion, unpersuasive critique of *Penn Central.* The Seventh Circuit rejected the "trust funds" theory and concluded that interline railroad creditors of a bankrupt Class III railroad stand in no better position than any other unsecured creditors. The conclusion rests on three determinations: (1) that there was no federal statutory basis for giving interline creditors a preference; (2) that federal interests were not so compelling as to justify preemption of state law and creation of federal common law; and (3) that the prerequisites under state (Illinois) law for the finding of a trust were not satisfied.

Even if this Court were free to ignore or depart from the rule established in *Ann Arbor Railroad,* employment of the *Iowa Railroad* 3–step analysis in this case would nevertheless lead to judgment in favor of the plaintiffs. First, the Court agrees with the Seventh Circuit that there is no federal statutory basis for holding the outstanding interline revenues are trust funds. As to the second consideration, the Court notes there are strong reasons for uniform regulation of interstate commerce by rail:

> [I]t is manifest that uniformity is required in the manner and means by which interline freight accounts are balanced. As this court observed in the *Trust Fund Case, supra,* 486 F.2d [519] at 521 [3d Cir.1973], "the nation's railroads function in many ways as a single system".... To make this system dependant upon the application of the various laws of the various states would not only place it in serious jeopardy, but also would virtually assure its destruction.

*In re Lehigh and New England Railway Co.,* 657 F.2d 570, 575 (3d Cir.1981) (footnote omitted). The contrary opinion of *Iowa Railroad* creates a conflict among the circuit courts which this Court need not wrestle with. For even if there were deemed to be no imminent and substantial conflict between federal and state law, such as would justify preemption, application of Michigan law would yield the same

result as would the emerging federal common law.

Apart from those reasons cited in *Ann Arbor Railroad* and *Penn Central* for finding an implied-in-fact trust relationship, grounds for recognizing a constructive trust are also present. A constructive trust arises by operation of law where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it. *Michigan Bank v. Kahlich, Inc.,* 23 Mich. App. 483, 487, 179 N.W.2d 29 (1970), citing 5 Scott on Trusts (3d ed.) § 462.1, p. 3415. Although it is most commonly used as a remedial device where control of the subject assets is obtained by fraud, fraud is not the exclusive predicate. *Chapman v. Chapman,* 31 Mich.App. 576, 579–580, 188 N.W.2d 21 (1971). A constructive trust may also be imposed where, as here, one takes advantage of necessities (e.g. interline freight charge collection practices) to obtain assets under circumstances which render retention thereof unconscionable. *Children of the Chippewa, Ottawa and Potawatomy Tribes v. Regents of the University of Michigan,* 104 Mich.App. 482, 513, 305 N.W.2d 522 (1981).

Here, E & LS has no legitimate claim to the subject interline funds. E & LS admits the funds are owed to plaintiffs. Although the Court may sympathize with E & LS in this time of financial hardship, the fact remains that E & LS has been and continues to be unjustly enriched at the expense of plaintiffs. Further retention of the funds is clearly unconscionable. Under these circumstances, a constructive trust represents an appropriate remedial device.[2]

Hence, whether the Court follows *Ann Arbor Railroad* or independently applies Michigan trust law principles, the result is the same. The interline revenues collected by E & LS and owed to plaintiffs Missouri–Pacific and Union–Pacific are deemed held in trust. Plaintiffs' right to payment of the outstanding balances is therefore supe-

---

**2.** The *Iowa Railroad* court, too, recognized the appeal of this reasoning where, as here, the interline funds are a matter of dispute solely between the interline carriers outside the context of bankruptcy proceedings. 840 F.2d at 545.

rior to that of any other unsecured creditor. Further, plaintiffs are entitled to immediate payment of the outstanding balances. Except as to the exact amounts due, which are indeterminate because continuously changing, there is no genuine issue as to any material fact. Both plaintiffs are entitled to summary judgment under Fed.R.Civ.P. 56(a) respecting their "trust funds" claims for relief.

### IV. PROMISSORY NOTE

Count II of Missouri–Pacific's complaint contains a second claim, based upon the E & LS promissory note, and represents an alternative means of enforcing at least a portion of E & LS's obligation. Missouri–Pacific's motion for summary judgment is supported by two affidavits of M.T. Ryder indicating E & LS is in default on the note and owes an outstanding balance of $576,847.71. E & LS has not stated a valid defense to the claim nor opposed the motion by affidavit or other showing that there remains a genuine issue of material fact. Thus, Missouri–Pacific is entitled to judgment as a matter of law on this claim as well.

### V. CONCLUSION

Based on the foregoing it is clear that plaintiffs' motions for summary judgment should be granted. An order consistent with this Opinion shall issue forthwith.

### ORDER OF THE COURT

In accordance with this Court's written Opinion issued on December 15, 1988,

IT IS HEREBY ORDERED that the motion for summary judgment of Missouri Pacific Railroad in Case No. M88–173 CA2 is GRANTED.

IT IS FURTHER ORDERED that as to the question of liability, Missouri Pacific is awarded judgment in its favor with respect to both counts of its complaint, while the specific dollar amount to which it is entitled remains a matter for subsequent determination.

IT IS FURTHER ORDERED that the motion for summary judgment of Union Pacific Railroad Company in Case No. G88–174 CA2 is GRANTED;

IT IS FURTHER ORDERED that as to the question of liability, Union–Pacific is awarded judgment in its favor, while the specific dollar amount to which it is entitled remains a matter for subsequent determination.