In the Matter of PENN CENTRAL
TRANSPORTATION CO.,
Debtor.

No. 70-347.

United States District Court,
E. D. Pennsylvania.

April 23, 1975.

Carl Helmetag, Jr., Philadelphia, Pa., for trustees, PCTC.

Alan C. Kauffman, Obermayer, Rebmann, Maxwell & Hippel, Philadelphia, Pa., for Peoria & Eastern.

Wilbur Bourne Ruthrauff, Gratz, Tate, Spiegel, Ervin & Ruthrauff, Philadelphia, Pa., for Richard Joyce Smith, trustee, New York, New Haven & Hartford RR Co.

### MEMORANDUM AND ORDER NO. 1855

FULLAM, District Judge.

The Peoria & Eastern Railway Company (hereinafter referred to as the "Peoria") has petitioned to impress a trust upon the assets of the Debtor. The Peoria is a non-operating railroad owning a single line in Indiana and Illinois. The Peoria's properties have been operated by the Debtor since February 1, 1968, pursuant to an operating agreement under which the Debtor pays the expenses of operation and maintenance, and collects the revenues derived from the operation of the railway.

The operating agreement provides that the Debtor must account to the Peoria within 60 days after the end of each calendar year and must pay the Peoria all the remaining "net income" from the year's operation. Generally, this would require the Debtor to pay the balance in the inter-company account, including any balance in the depreciation account, together with interest at the rate of 6% yearly from the date the amount becomes certain, until it is paid.

During reorganization, the Trustees of the Debtor have not made any payments to Peoria under the agreement. The calculations prepared by the Trustees, and apparently approved by the Peoria, show that the Peoria is owed $3,919,168 under the operating agreement for the years 1970 through 1973. The Trustees have refused to pay this balance on the theory that the Peoria is merely a leased line. The Trustees argue that where, as here, the Trustees have not taken definitive action to either affirm or reject the agreement, the Debtor may withhold the payment of the rental due until this determination is made. Section 77 of the Bankruptcy Act, 11 U.S.C. § 205. The petitioners have not challenged this general proposition, but rather argue that:

> "The Arrangement under the operating agreement is not a lease, but rather a unique fiduciary arrangement in which the Penn Central acts as a trustee for the Peoria."

If the $3,919,168 was held in trust, as argued by petitioner, then the Peoria would have a right to receive these funds notwithstanding the Debtor's reorganization. But if the Peoria is actually a leased line, as argued by the Trustees, a debtor-creditor relationship would arise.

Obviously, the pivotal issue raised by the present petition is the question of whether the operating agreement between the Debtor and the Peoria resulted in the creation of a "trust" relation-

ship between the railroads, or a debtor-creditor relationship. Nowhere in the terms of the operating agreement is the relationship between these railroads described as either a "trust" or a "lease" arrangement. Although there is clearly no express trust created by the operating agreement, petitioner argues that the Court should find an implied trust or impress a constructive trust on Debtor's assets. As was stated by the Third Circuit Court of Appeals in In the Matter of Penn Central Trans. Co., Appeal of Indiana Harbor Belt R. R. Co., et al., 486 F.2d 519, 524 (3d Cir. 1973):

> "When the language of the parties fails to clearly indicate their intention, [the trust] may be ascertained by other objective manifestations of intent, such as the facts and circumstances surrounding the transaction and the relationship of the parties."

■ Although not conclusive, one factor in distinguishing between a trust relationship and an ordinary debt is whether or not the recipient of the funds was entitled to use the funds as his own, and commingle the funds with his own. *See* Scott on Trusts, 3d ed. § 12.2. The parties in this action agree that all monies derived from the operation of the Peoria were placed in the general funds of Penn Central. No segregated fund for the account of the Peoria was maintained by Penn Central, nor is there any suggestion in the record that Peoria requested that "its" funds not be commingled with the Debtor's general funds. Generally, "commingling

indicates a debtor-creditor relationship and not a trust." Appeal of Indiana Harbor Belt R. R. Co., *supra*, 486 F.2d at 524.

■ A second factor to consider is the presence in this operating agreement of a provision for the payment of interest by the collecting carrier. As was mentioned above, the agreement provides for the payment of 6% annual interest on all "net income" due the Peoria which is not paid within 60 days of the close of the calendar year. Although not conclusive, the presence of a provision for the payment of interest indicates the presence of a debtor-creditor relationship. As was stated by the Third Circuit Court of Appeals, "[the] debtor-creditor relationship entails the right to use another's money, the usual *quid pro quo* for which is the obligation to pay interest." Appeal of Indiana Harbor Belt R. R. Co., *supra*, 486 F.2d at 524. See 1A Scott, Law of Trusts, § 12.2, at 108.[1]

■ ■ The evidence of commingling of funds, as well as the presence of the interest provision in the operating agreement, supports the Trustees' position. The Trustees' position is further supported by the "facts and circumstances surrounding the transaction and the relationship of the parties." Appeal of Indiana Harbor Belt R. R. Co., *supra*, 486 F.2d at 524. The burden is on the petitioner to prove the existence of a trust relationship, and this burden has not been met.

---

1. The Peoria advances the theory that this 6% interest charge is not really interest at all, but rather is in "the nature of damages or a penalty for breach of the relationship between the parties." In support of this position, Peoria points out that interest is not due on this account until 60 days after the close of the calendar year, thus suggesting that the interest charge is really a liquidated damage provision against the "trustee" for breach of the trust instrument. However, there is an alternative, and equally plausible explanation for the 60-day delay in charging Penn Central interest on the Peoria account. Penn Central's collection of the revenue attributable to the operation of the Peoria Railway in any given year could extend well into the following calendar year. Obviously, the Debtor would not pay interest on Peoria's revenue unless the Debtor had the money in hand. The 60-day lag period provides the debtor with an opportunity to collect the accounts receivable from the previous year and to determine the amount of Peoria's monies it intends to use for its own benefit. This lag period offsets the Debtor's right to use Peoria's monies received during the first 60 days of each calendar year against revenues which are merely accounts receivable to the Debtor which cannot be collected until some time after the expiration of the 60-day period.

The most significant argument raised by petitioner is that this case is controlled by the Third Circuit Court of Appeals' holding in the Appeal of Indiana Harbor Belt R. R. Co. case.[2] In that case, the Court of Appeals held where there is interline movement of passenger and freight traffic, and the Debtor acts as a collecting agency for all of the railway lines involved in performing services for the joint transportation venture, the Debtor holds the funds collected as trustee for the other railroads. The critical factor in determining the existence of a trust arrangement in that case was the Court of Appeals' conclusion that the Debtor was collecting money for services performed by other carriers.[3]

■ Unlike the interline situation, the Debtor does not collect money for the Peoria account for services performed by the Peoria. Under the operating agreement, the Debtor operates and maintains the property of the Peoria. The Peoria performs no services similar to those provided by railroads participating in interline movements. Although there are approximately 160 people who are employed to work on the Peoria's properties, they are regarded and treated as Penn Central employees. All of these employees are included on the Debtor's payrolls, paid with the Debtor's checks, and are covered by the basic labor agreement that applies throughout the Debtor's system. These employees operate the locomotives and the handling of the switching, and their work is supervised by the Debtor's general manager at Indianapolis. All of the "facts and circumstances surrounding . . . the relationship" between the parties supports the conclusion that the Peoria is nothing more than a part of the Debtor's physical plant, for which they are paid "rent" in accordance with the provisions of the operating agreement.[4]

■ Finally, petitioner argues that even if the operating agreement does not constitute an express or implied trust, the Court should impress a constructive trust on the Debtor's assets. There is no evidence in the record that the Debtor violated a fiduciary obligation, or obtained any of the Peoria's property by fraud, duress, undue influence or mistake. Petitioner's argument in support of the constructive trust is based on two contentions: (1) that the Debtor is an agent for the Peoria and that in that capacity withheld revenues due its principal; and (2) that the Trustees have not been diligent in adopting the operating agreement. Initially, the Debtor was not acting as an agent for the Peoria, as is evidenced by the indemnification provision in the operating agreement which provides that the Debtor is the indemni-

---

2. Petitioner cites Ewen v. Peoria & Eastern Ry. Co., 78 F.Supp. 312, 315–17 (S.D.N.Y. 1948) for the proposition that this operating agreement has been interpreted as establishing a trust arrangement. This interpretation of the Ewen case is overly generous. In Ewen, the Peoria alleged that the New York Central Railroad (one of the predecessors of Penn Central) had improperly accounted for funds due the Peoria. Because the New York Central was the Peoria's majority stockholder, the court held that the New York Central had a fiduciary duty not to "use its power to prejudice" the rights of the minority shareholders. The court's discussion of the New York Central's fiduciary duties arose in the context of these allegations of improper accounting, and there is no suggestion in the Ewen opinion that a trust relationship between the railroads arose per se from the operating agreement. Since there is no allegation of improper accounting by the Debtor in the present matter, the Ewen case is inapplicable in the context of this case.

3. In re Penn Central Trans. Co., supra, 486 F.2d at 528. The Court of Appeals found that the interline accounts, other than freight and passenger accounts, did not constitute funds held in trust because the revenue collected "merely represent the performance of services by one railroad." 486 F.2d at 528.

4. The conclusion that the Peoria is not an interline carrier is supported by the fact that the Peoria has. no public rates and is not included in the carriers that participate in through routes and joint rates.

tor for the Peoria. Agents do not ordinarily indemnify principals against liability for the agents' legitimate acts. In addition, the fact that the operating agreement has not been affirmed or disaffirmed to date cannot form the basis for imposing a constructive trust. As this Court has noted, the Trustees have made every possible effort to comply with the provisions of § 77 of the Bankruptcy Act. 11 U.S.C. § 205. In re Penn Central Trans. Co., Memorandum re Proceedings Pursuant to § 207(b) of the Rail Reorganization Act of 1973, 382 F.Supp. 821, 828–830 (E.D.Pa.1974).

The Peoria has not been discriminated against in the administration of the Debtor's estate. The Debtor has not been paying leased line rentals, and in this respect the Peoria is in substantially the same position as other leased lines in the Penn Central system. The petitioner has presented no set of facts which warrant giving the Peoria special consideration over other leased lines similarly situated. Accordingly, for all of the reasons expressed above, the petition to impress a trust on the Debtor's assets is denied.